**BREIT LAW, P.C.**
**Michelle G. Breit – SBN 021439**
9375 E. Shea Blvd., Suite 100
Scottsdale, Arizona 85260
Telephone    (480) 336-2800
Facsimile    (480) 336-2908
Email        mbreit@breitlawgroup.com

*Attorneys for Plaintiff Jane Davenport*

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Jane Davenport, an individual<br><br>                Plaintiff,<br><br>    v.<br><br>Spellbinders Paper Arts Company, LLC., an Arizona limited liability company,<br><br>                Defendant. | Case No.<br><br>**COMPLAINT FOR: (1) BREACH OF CONTRACT; (2) BREACH OF CONTRACT; (3) BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING; (4) NEGLIGENT MISREPRESENTATION; (4) FRAUD; (5) UNJUST ENRICHMENT; AND (6) ACCOUNTING**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Jane Davenport ("Davenport" or "Plaintiff") alleges for her complaint against defendant Spellbinders Paper Arts Company, LLC ("Spellbinders" or "Defendant"), on personal knowledge as to her own actions and on information and belief as to the actions of others, as follows:

## THE PARTIES

1.    Davenport is an Australian citizen with her principal place of business in Byron Bay, New South Wales, Australia.

2.    Spellbinders is an Arizona limited liability company, has its principal place of business in Maricopa County, Arizona.

## JURISDICTION AND VENUE

3.    Federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332. Plaintiff is foreign citizen with her residence in Australia. Defendant is an Arizona limited liability

company, whose sole member is Spellbinders Holdings Inc., having its principal place of business in Jenkintown, Pennsylvania. Therefore, complete diversity of citizenship exists. The amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.

4. This Court has personal jurisdiction over Defendant because Defendant has its principal place of business in this district.

5. Venue in the District of Arizona is proper pursuant to 29 U.S.C. § 1391 because Defendant is located in this district, a substantial part of the events or omissions on which the claims herein alleged occurred in this district and Defendant executed the subject contracts in the district.

6. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred and are occurring in this judicial district.

## GENERAL AVERMENTS

7. Davenport is a world renown artist, educator, product designer and five-time bestselling author. In addition, Davenport has a strong social media presence and offers online education throughout the world.

8. Defendant Spellbinders is a manufacturer, distributor, and retailer of hobby and craft products.

9. In or about January 31, 2017, Davenport and Defendant entered into a non-exclusive license agreement under which Davenport licensed Defendant to use certain of Davenport's copyrighted works and trademarks, likeness, product development expertise, and personal appearances for the development of arts materials and supplies (referred to as the "Initial License Agreement").

10. The Initial License Agreement had an initial term of two years.

11. As part of the Initial License Agreement, as set out in Schedule A thereto, Defendant paid Davenport a non-refundable advance royalty.

12. In addition, as set out in Section 5(a) of the Initial License Agreement,

Defendant agreed to pay Davenport an on-going royalty based on Defendant's net sales of products using Davenport's licensed designs.

13. Further, as part of the on-going royalty arrangement, as set out in Schedule A to the Initial License Agreement, Defendant agreed to pay Davenport a minimum guaranteed royalty for the length of the Initial License Agreement.

14. Defendant's obligation to pay the minimum guaranteed royalty under the Initial License Agreement was separate from the non-refundable advance royalty that Defendant paid.

15. Under the Initial License Agreement, Defendant agreed to pay the on-going royalties to Davenport on a quarterly basis.

16. Pursuant to Section 5(b) of the Initial License Agreement, Defendant agreed to deliver to Davenport a quarterly statement, known as the "Royalty Statement," within thirty (30) days after the end of each calendar quarter.

17. Defendant agreed that as part of the Royalty Statement it would provide certain information to Davenport, including but not limited to Defendant's total net sales, individual product sales, the applicable royalty rate, and the total royalty paid for sales made during the prior calendar quarter.

18. Before the Initial License Agreement terminated, Davenport and Defendant entered into two (2) addenda to the Initial License Agreement for additional art material collections for potential development, manufacture, and sale, namely "Schedule D to the Licensing Agreement Dated January 31, 2017" ("Schedule D Addendum"), and "Schedule E to the Licensing Agreement Dated January 31, 2017" ("Schedule E Addendum") (referred jointly herein as "License Addenda"). The effective date of the License Addenda was April 20, 2018.

19. The License Addenda each had a term ending August 31, 2020.

20. Under each of the addendum, Davenport granted Defendant non-exclusive licenses to additional intellectual property owned by Davenport.

21. Under the Schedule D Addendum, Defendant agreed to pay and did pay

Davenport a non-refundable advance royalty within ten business days of signing Schedule D.

22. In addition, under Section 5 of the Schedule D Addendum, Defendant agreed to pay on-going royalties to Davenport based on net sales of individual products Defendant sold and to do so in accordance with the terms of Section 5 of the Initial License Agreement.

23. Also under Section 6 of the Schedule D Addendum, Defendant agreed to pay specified minimum guaranteed royalties to Davenport from the April 20, 2018 effective date of Schedule D until August 31, 2019.

24. Further, pursuant to Section 6, Defendant agreed to pay Davenport a different specified guaranteed minimum royalty for the time period of September 1, 2019 to August 31, 2020.

25. Similarly, under the Schedule E Addendum, Defendant agreed to pay and did pay Davenport a non-refundable advance royalty within ten business days of signing Schedule E.

26. In addition, under Section 4 of the Schedule E Addendum, Defendant agreed to pay on-going royalties to Davenport based on net sales of individual products Defendant sold and to do so in accordance with the terms of Section 5 of the Initial License Agreement.

27. Also under the Schedule E Addendum, Defendant agreed to pay specified minimum guaranteed royalties to Davenport from the April 20, 2018 effective date of Schedule E until August 31, 2019.

28. Further, pursuant to Section 5 of the Schedule E Addendum, Defendant agreed to pay Davenport a different specified guaranteed minimum royalty for the time period of September 1, 2019 to August 31, 2020.

29. Despite Defendant's obligation to pay minimum guaranteed royalties under the License Addenda, Defendant did not pay Davenport as required.

30. In or about November 2020, Davenport and Defendant began communicating regarding Defendant's shortfalls in the guaranteed minimum royalties. The parties also discussed Defendant's request for an extension of the sell-off periods contained in the Initial License Agreement and License Addenda.

31. On or about November 14, 2020, Davenport and Defendant reached an oral agreement to resolve the outstanding dispute regarding guaranteed minimum royalties owed by Defendant to Davenport, which was then memorialized in an email. The agreement modified certain terms to the Initial License Agreement and License Addenda (referred to as the "November 2020 Modifications").

32. Under the November 2020 Modifications, Defendant agreed to wire a set amount of funds immediately to Davenport and to ship an agreed-up amount of product to Davenport, in satisfaction of the overdue guaranteed minimal royalties. In return, Davenport agreed to grant Defendant a two-year extension of its sell-off period for all Davenport product.

33. In or about January 2021, Davenport received the products shipped by Defendant. But, rather than Defendant pay for the shipping cost, Defendant shifted the shipping cost to Davenport, forcing Davenport to pay approximately $8,546.00 (USD).

34. On or about February 27, 2021, Davenport notified Defendant that Defendant's Royalty Statements were not correctly reflecting the terms of the November 2020 Modifications. Instead of accounting for the November wire payment and product shipment as payments against the overdue minimum royalties Defendant owed under the Initial License Agreement and License Addendum, the Royalty Statements reflected those items as a negative balance in Davenport's royalty account.

35. Davenport demanded that Defendant remove any negative balance to Davenport's royalty account and pay all royalties due.

36. Defendant refused and asserted that Defendant would treat the payment and product under the November 2020 Modifications as an advance against royalties in

contravention of the terms of the Initial License Agreement, License Addenda and November 2020 Modifications.

37. On or about March 13, 2021, Davenport sent a Notice of Breach of Contract and Termination to Defendant in accordance with the terms of the Initial License Agreement.

38. Since then, Davenport learned that, repeatedly throughout the terms of the Initial License Agreement and License Addenda, Defendant submitted to Davenport Royalty Statements that did not accurately report Defendant's sales of products for which Defendant owed Davenport royalties and did not apply correct royalty rates in calculating royalties Defendant owed to Davenport.

39. In addition, Davenport learned that Defendant did not pay correct royalties to Davenport as required by the parties' agreements. For example, unbeknownst to Davenport, at times Defendant paid royalties at a lower rate than required under the parties' agreements and failed to pay royalties on certain sales of products as required.

40. Defendant continues to fail to accurately and fully pay Davenport royalties, shipping costs, product samples, advances, and reimbursements as required under the Initial License Agreement and License Addenda.

## CLAIM I
## BREACH OF CONTRACT

41. Davenport realleges and incorporates by reference each of the numbered paragraphs above as if fully set forth here.

42. Under the Initial License Agreement and License Addenda entered into between Davenport and Defendant, Defendant was required to pay certain sums to Davenport, including but not limited to guaranteed minimum royalties and on-going royalties based on sales of product licensed from Davenport.

43. Davenport performed all material conditions, covenants, and promises required to be performed on her part in accordance with the terms and conditions of the parties' agreements.

44. Defendant failed to make all payments as required under the Initial License Agreement and License Addenda.

45. Defendant's failure to make all payments as required under the Initial License Agreement and License Addenda is a material breach of the Initial License Agreement and License Addenda, which has caused harm to Davenport.

46. As a direct and proximate result of Defendant's breaches, Davenport has suffered damages in an amount to be determined at trial, but not less than $75,000, along with costs of suit and attorneys' fees.

47. Davenport is entitled to reasonable attorneys' fees, including but not limited to as provided under A.R. S. § 12-341 and A.R.S. § 12-341.01(A).

## CLAIM II
## BREACH OF CONTRACT

48. Davenport realleges and incorporates by reference each of the numbered paragraphs above as if fully set forth here.

49. Under the November 2020 Modifications, Defendant was required to ship product to Davenport at Defendant's expense.

50. Instead, Defendant shifted the shipping costs to Davenport, which Davenport was forced to pay.

51. Defendant's failure to pay for the shipping is a material breach of the November 2020 Modifications, which has caused harm to Davenport.

52. As a direct and proximate result of Defendant's breaches, Davenport has suffered damages in an amount to be determined at trial, along with costs of suit and attorneys' fees.

53. Davenport is entitled to reasonable attorneys' fees, including but not limited to as provided under A.R. S. § 12-341 and A.R.S. § 12-341.01(A).

## CLAIM III
## **BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

54. Davenport realleges and incorporates by reference each of the numbered paragraphs above as if fully set forth here.

55. Under the Initial License Agreement, License Addenda, and November 2020 Modifications, Defendant owed Davenport an implied contractual duty to act in accordance with the covenant of good faith and fair dealing.

56. Defendant breached the covenant of good faith and fair dealing, at least, by failing to accurately report to Davenport its sales of licensed products, by failing to accurately calculate royalties due to Davenport, and by failing to pay all royalties and other payments due under the parties' agreements, by shipping product to Davenport to pay a debt owed to Davenport, but shifting the shipping fees to Davenport.

57. As a direct and proximate result of Defendant's breaches, Davenport has suffered damages in an amount to be determined at trial, along with costs of suit and attorneys' fees.

58. Davenport is entitled to reasonable attorneys' fees, including but not limited to as provided under A.R. S. § 12-341 and A.R.S. § 12-341.01(A).

## CLAIM IV
## **NEGLIGENT MISREPRESENTATION**

59. Plaintiff realleges and incorporates by reference each of the numbered paragraphs above as if fully set forth here.

60. Defendant represented to Davenport that it would accurately and correctly account for and report sales of products for which Defendant was required to pay Davenport royalties and that Defendant would provide accurate information related to the calculation of royalties owed as part of the quarterly Royalty Statements.

61. Defendant either knowingly or negligently by failing to exercise reasonable care and/or competence, provided Royalty Statements to Davenport which reported false information regarding Defendant's sales of products for which Defendant owed

Davenport royalties and false information regarding the calculation of royalties owed by Defendant to Davenport.

62. Defendant intended Davenport rely on the information provided, provided the information for that purpose, and sought to induce Davenport to continue providing services and a license to her intellectual property in reliance on that false information.

63. Davenport relied on that information, and her reliance was justified.

64. As a direct and proximate result of Defendant's negligent misrepresentations, Davenport has suffered damages in an amount to be determined at trial, along with costs of suit and attorneys' fees.

# CLAIM V
# FRAUD

65. Plaintiff realleges and incorporates by reference each of the numbered paragraphs above as if fully set forth here.

66. As pled more fully above, Defendant represented to Davenport that it would accurately and correctly account for and report sales of products for which Defendant was required to pay Davenport royalties and that Defendant would provide accurate information related to the calculation of royalties owed as part of the quarterly Royalty Statements.

67. Defendant knowingly provided to Davenport false information regarding Defendant's sales of products for which Defendant owed Davenport royalties and false information regarding the calculation of royalties owed by Defendant to Davenport.

68. Defendant knew the information was false when Defendant provided this information to Davenport.

69. Defendant made the false representations with the intent that Davenport would rely on and act upon them.

70. Defendant's conduct was willful, wanton and in callous disregard for Davenport's interests.

71. At all relevant times, Davenport was unaware of the falsity of Defendant's

representations and believed them to be true.

72. In reasonable reliance on Defendant's representations, Davenport was induced to provide her intellectual property, likeness, product development, and personal appearances to Defendant.

73. Davenport has been substantially harmed by Defendant's misrepresentations in an amount that exceeds seventy-five thousand dollars ($75,000.00 USD).

### CLAIM VI
### UNJUST ENRICHMENT

74. Davenport realleges and incorporates by reference each of the numbered paragraphs above as if fully set forth here.

75. Defendant accepted the full benefit of Davenport's intellectual property, likeness, product development, and personal appearances.

76. Davenport did not provide those benefits to Defendant gratuitously.

77. Defendant has not fully or fairly compensated Davenport for the use of her intellectual property, likeness, product development, and personal appearances.

78. Davenport has been impoverished and suffered financial harm.

79. Defendant's enrichment is connected to and derived from Davenport's impoverishment.

80. To the extent that an adequate remedy is not provided by law, it would be unjust and inequitable for Defendant to retain the benefits derived from Davenport's intellectual property, likeness, product development, and personal appearances without compensating Davenport for the benefit.

### CLAIM VII
### ACCOUNTING

81. Davenport realleges and incorporates by reference each of the numbered paragraphs above as if fully set forth here.

82. Davenport is entitled to an accounting by reason of the open, mutual and current account among Davenport and Defendant.

83. The exact monies due and owing to Davenport from Defendant is unknown to Davenport and cannot be ascertained without an accounting, since the information necessary to determine that amount due is within the exclusive knowledge of Defendant.

84. An accounting is necessary and appropriate to ascertain the sums due to Davenport from Defendant.

85. Davenport has demanded a complete accounting from Defendant of the revenue derived from the sales of products licensed under the agreements between Davenport and Defendant in order to calculate the correct royalties and other sums due to Davenport from Defendant.

86. Defendant has failed and refused to give Davenport a complete accounting.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays that this Court grant the following relief:

A. Award damages to Plaintiff in a sum according to proof at trial, in excess of $75,000 exclusive of interest and costs;

B. Award Plaintiff for the value in which Defendant was enriched;

C. Award Plaintiff reasonable attorneys' fees, costs and expenses as provided under A.R.S. § 12-341 and A.R.S. § 12-341.01(A) and any other applicable statute or rule;

D. Award Plaintiff punitive and exemplary damages against Defendant and to Plaintiff in an amount to be proven at trial;

E. Award Plaintiff cost of suit;

F. Award Plaintiff pre-judgment and post-judgment interest at the maximum rate allowed by law;

G. Order an accounting; and

H. Such further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of this action.

DATED this 27th day of August, 2021.

**BREIT LAW, PC**

*/s/ Michelle G. Breit*
Michelle G. Breit (SBN 021439)
mbreit@breitlawgroup.com
9375 E. Shea Blvd., Suite 100
Scottsdale, Arizona 85260
Telephone     (480) 336-2800
Facsimile      (480) 336-2908

*Attorneys for Plaintiff Jane Davenport*